# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**PAUL BOUCHEREAU, ET AL.**

                                              **CIVIL ACTION**

**v.**

                                         **No. 14-805-JWD-SCR**

**SID GAUTREAUX, ET AL.**

## RULING AND ORDER

Before the Court is Defendant Sheriff Sid Gautreaux's Motion to Dismiss (Doc. 2), made pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  Plaintiffs oppose the motion. (Doc. 5). The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.  After carefully considering the law, facts, and arguments of the parties, the motion to dismiss is granted in part and denied in part.

## I.      Factual Allegations

Plaintiffs Paul and Karen Bouchereau, individually and on behalf of their son Ross Bouchereau, brought suit against Defendants Sheriff Sid Gautreaux ("Gautreaux") in his individual and in his official capacity as East Baton Rouge Parish Sheriff; East Baton Rouge Parish Prison ("Prison"); John Doe; Jane Doe; and ABC Insurance Company.  (Doc. 1-2, P. 2 ¶ 1).  Plaintiffs have filed an amended complaint and have added as a Defendant the Parish of East Baton Rouge Division of Medical Services.  (Doc. 17, P. 3 ¶ 1).  Plaintiffs allege that Defendants' deliberate indifference and gross negligence resulted in violations of Ross Bouchereau's civil rights, specifically those guaranteed by the Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States.  (Doc. 1-2, P. 5 ¶ 15).

---

[1] There are multiple defendants in this case, but this Motion to Dismiss is brought only by Sheriff Sid Gautreaux.

For purposes of the present motion, Plaintiffs' well-pleaded allegations are assumed to be true.  In their original and amended petitions, Plaintiffs allege that on September 6, 2014, a vehicle driven by Ross Bouchereau ("Ross") was stopped for speeding in East Baton Rouge Parish. (Doc. 1-2, P. 2 ¶ 3).  He was arrested and charged with a probation violation and possession of drug paraphernalia. (Doc. 1-2, P. 3 ¶ 4).  He was taken to the East Baton Rouge Parish Prison. (*Id*.)  Ross was placed in solitary confinement for medical observation and, while in solitary confinement, showed signs of having convulsions, tremors, high fever, numerous cuts, abrasions, and bruises.  (Doc. 7, P. 2 ¶ 9A).

While in solitary confinement, Ross's condition worsened.  (*Id*.)  Between September 10, 2014, and September 13, 2014, Ross's condition deteriorated, and he began to complain of muscle aches, fatigue, high fever, confusion and convulsions to the point that he became non-responsive the evening of September 12, 2014, or morning of September 13, 2014. (Doc. 7, P. 2 ¶ 9C).  Despite visible, obvious medical and physical deficiencies, conditions that manifested over a period of several days, Defendants denied Ross medical treatment. (Doc. 7, P. 3 ¶ 9D). On the morning of September 13, 2014, Ross was found naked and in a fetal position in his cell. (*Id*.)  It is alleged that Defendants failed to provide adequate medical attention to Ross's obvious medical and physical condition for eight to twelve hours following his first becoming non-responsive and showing signs of suffering from septic shock.  (Doc. 7, P. 3 ¶ 9E).

On September 14, 2014, Ross was taken to Our Lady of the Lake Regional Medical Center Emergency Room in grave condition.  (Doc. 1-2, P. 3 ¶ 7).  According to Ross's medical providers, his medical condition would have been noticeably exigent, requiring acute medical attention twenty-four to thirty-six hours prior to his reporting to Our Lady of the Lake Emergency Room. (Doc. 7, P. 3 ¶ 9F).  Immediately after being admitted to Our Lady of the

Lake, Ross went into cardiac arrest twice. (Doc. 1-2, P. 3 ¶ 8).  He was diagnosed with renal failure, two collapsed lungs, a brain injury and other injuries to his vital organs. (*Id.*).

Plaintiffs allege Defendants are governed by a policy requiring enhanced observation of individuals that are placed in solitary confinement; inspections are required to take place every thirty minutes. (Doc. 7, P. 2 ¶ 9B).  Defendants failed to comply with these policies and procedures governing the treatment of prisoners placed in solitary confinement and/or prisoners requiring medical treatment. (Doc. 7, P. 3 ¶ 9G).  It is alleged that there have been three or more reported incidents of prisoners being rushed to local emergency rooms as a result of ailments and/or injuries sustained while in solitary confinement at the Prison in the three month period surrounding Ross's incarceration. (Doc. 7, P. 4 ¶ 9I).  Plaintiffs allege Sheriff Sid Gautreaux failed to properly train his staff/agents and/or failed to properly monitor his staff/agents as it pertains to protocol involving prisoners requiring medical attention while in solitary confinement and that his actions were clearly incompetent and in violation of State and Federal laws. (Doc. 7, P. 4 ¶ J).

Plaintiffs  allege that Ross's injuries and their resulting damages were caused solely and proximately by the negligence and/or fault of Sheriff Gautreaux, East Baton Rouge Parish Prison, and/or its employees, representatives and agents, including, but not limited to, John Doe and Jane Doe, and said negligence and/or fault consisted of (a) failing to establish and implement adequate inspection procedures for the discovery and elimination of hazards; (b) failing to identify and remedy the need for medical treatment; (c) failing to exercise reasonable care; (d) failing to prevent the subject incident; (e) failing to provide proper medical treatment; and (f) failing to properly train its employees, representatives and/or agents. (Doc. 1-2, P. 3-4 ¶ 10).

Plaintiffs Paul and Karen Bouchereau allege they witnessed their child's suffering and severe physical and mental pain and that they have suffered the loss of his love, society, services, work and affection. (Doc. 1-2, P. 4 ¶ 13). Plaintiffs allege that Gautreaux is liable to them for these damages. (*Id.*).

Plaintiffs specifically allege that the actions of Sheriff Gautreaux occurred while he was acting individually and in his capacity as agent, servant, or employee of the East Baton Rouge Sheriff's Office and East Baton Rouge Parish Prison. (Doc. 1-2, P. 4 ¶ 14). Plaintiffs also claim that Sheriff Gautreaux is vicariously liable for the damages sustained by Plaintiffs under the doctrine of respondeat superior. (*Id.*).

Finally, Plaintiffs claim that Gautreaux, acting through his employees, was deliberately indifferent and grossly negligent in his handling of Ross while Ross was in his care, control, and custody. (Doc. 1-2, P. 5 ¶ 15). This deliberate indifference and gross negligence resulted in violations of Ross's civil rights guaranteed by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution in that he was deprived of his liberty without due process and the privileges and immunities guaranteed him, rendering Gautreaux liable to Plaintiffs under 42 U.S.C. §§ 1983 and 1988. (*Id.*).

## II. Discussion

### A. Rule 12(b)(6) standard

In *Johnson v. City of Shelby, Mississippi*, 574 U.S. ____, 135 S.Ct. 346 (2014), the Supreme Court has explained:

> Federal pleading rules call for "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. Rule Civ. Proc. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted. See Advisory Committee Report of October 1955, reprinted in 12A C. Wright, A. Miller, M. Kane, R. Marcus, and A. Steinman, Federal Practice and Procedure, p. 644 (2014 ed.) (Federal Rules of Civil

Procedure "are designed to discourage battles over mere form of statement"); 5 C. Wright & A. Miller, § 1215, p. 172 (3d ed. 2002) (Rule 8(a)(2) "indicates that a basic objective of the rules is to avoid civil cases turning on technicalities"). In particular, no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (a federal court may not apply a standard "more stringent than the usual pleading requirements of Rule 8(a)" in "civil rights cases alleging municipal liability"); *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (imposing a "heightened pleading standard in employment discrimination cases conflicts with Federal Rule of Civil Procedure 8(a)(2)").

*Id.*, 135 S.Ct. at 346-347.

Interpreting Rule 8(a) and *Twombly*, the Fifth Circuit explained:

The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Twombly*, 127 S.Ct. at 1965) (emphasis added).

Analyzing the above case law, our brother in the Western District stated:

Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S.Ct. at 1949, *Twombly*, 555 U.S. at 556, 127 S.Ct. at 1965. This analysis is not substantively different from that set forth in *Lormand*, *supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. Rule Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. This standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided there is a "reasonable

expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257, *Twombly*, 555 U.S. at 556, 127 S.Ct. at 1965.

*Diamond Services Corp. v. Oceanografia, S.A. De C.V.*, No. 10-177, 2011 WL 938785, at *3 (W.D.La. Feb. 9, 2011) (citation omitted).

Finally, in *Thompson v. City of Waco, Texas*, 764 F.3d 500 (5th Cir. 2014), the Fifth Circuit recently summarized the Rule 12(b)(6) standard as thus:

> We accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff. We need not, however, accept the plaintiff's legal conclusions as true. To survive dismissal, a plaintiff must plead enough facts to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Our task, then, is to determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.

*Id.* at 502-03 (citations and internal quotations omitted).

**B. Vicarious liability under § 1983**

Sheriff Gautreaux argues that a government official cannot be held liable under § 1983 on the basis of respondeat superior. Gautreaux is correct. There is no vicarious liability under § 1983. *See, e.g., Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 380-381 (5th Cir. 2005) ("Supervisory officials cannot be held liable under section 1983 for the actions of subordinates . . . on any theory of vicarious or *respondeat superior* liability."). Gautreaux's motion is granted on this claim.

**C. Section 1983 claims against Sheriff Gautreaux in his individual capacity**

**1. Parties' arguments**

Gautreaux argues that Plaintiffs have not stated a valid individual capacity claim against him because they have not alleged specific conduct giving rise to a constitutional violation. Gautreaux further states that he is entitled to qualified immunity and that Plaintiffs bringing a

claim pursuant to section 1983 against public officials in their individual capacities are subject to a heightened pleading standard. (Doc. 2-1, P. 10). Plaintiffs counter that they have made allegations sufficient to defeat this motion. (Doc. 5, P. 8). Gautreaux replies that Plaintiffs do not allege any facts to show that Gautreaux was personally involved in the treatment or care of Ross. (Doc. 8, P. 9).

## 2. Analysis

### a. Qualified Immunity

Plaintiffs' § 1983 claims seeking damages from a defendant in his individual capacity are subject to the affirmative defense of qualified immunity. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). When a defendant such as Gautreaux invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *Id*. (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc)).

To demonstrate this, the Plaintiffs must satisfy a two-part test. *Id.* (citation omitted). "First, [they] must claim that the defendants committed a constitutional violation under current law." *Id.* (citation omitted). "Second, [they] must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id.* (citation omitted). *Schultea v. Wood,* 47 F.3d 1427, 1434 (5th Cir.1995) (en banc). "When greater detail is required to address the defense of qualified immunity, the Court may insist that a plaintiff file a reply pursuant to Federal Rule of Civil Procedure 7(a) tailored to an answer pleading the defense of qualified immunity." *Clayton v. Columbia Cas. Co.*, No. 11-845, 2012 WL 2952531, at *3 (M.D. La. July 19, 2012) (citing *Schultea v. Wood,* 47 F.3d 1427, 1433-34 (5th Cir.1995) (en banc)).

## b. Fourth, Fifth, and Eighth Amendment violations

Plaintiffs have asserted that Ross's Fourth, Fifth, and Eighth Amendment rights were violated by Gautreaux. In sum, the Court finds that Plaintiffs have failed to state a claim that any of these rights were violated.

First, in their opposition memorandum, Plaintiffs assert that Ross was subjected to an improper search, in violation of the Fourth Amendment. (Doc. 5, P. 1). But Plaintiffs fail to make this claim in either the original or supplemental petitions; as a result, they have failed to state this claim. Thus, Gautreaux is entitled to a Rule 7 reply clarifying this claim.[2]

Second, Plaintiff's Fifth Amendment claim also fails. In *Morin v. Caire*, 77 F.3d 116 (5th Cir. 1996), plaintiff brought suit against a police officer and a city when he was arrested for murder and held in custody until the charges were brought. *Id.* at 119. The Fifth Circuit held that the district court erred in not granting the officer's motion to dismiss the plaintiff's Fifth Amendment Claim. *Id.* at 120. The Fifth Circuit held that "the Fifth Amendment applies only to the actions of the federal government, and not to the actions of a municipal government as in the present case." *Id.* (citing *Richard v. Hinson*, 70 F.3d 415, 416 (5th Cir. 1995)). This rule continues to be followed today. *See Blount v. Miss. Dep't. of Human Servs.*, No. 3:14cv336, 2015 WL 3550024 (S.D. Miss. June 5, 2015) (quoting *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000) ("The Fifth Amendment applies only to violations of constitutional rights by

---

[2] Although not raised by Gautreaux, the Court notes that it is unclear at this stage whether the Plaintiffs could plausibly state a claim against Gautreaux for Ross's injuries based solely on a Fourth Amendment violation. As stated above, the Plaintiffs must show that Gautreaux was "either personally involved in the constitutional violation" or that his "acts are causally connected to the constitutional violation alleged." *Gonzalez*, 2013 WL 6244183, at *7. At this point, Plaintiffs have done nothing to show any causal connection or personal involvement by the Sheriff in any Fourth Amendment violation, and any such showing seems extremely unlikely. Nevertheless, the Court will grant the Plaintiff leave to demonstrate this, though the Court emphasizes that any such allegation must be made in good faith and only with an adequate factual basis.

the United States or a federal actor.")).  Thus, Gautreaux's motion to dismiss is granted.  The

Plaintiffs cannot possibly recover on this claim, so it is dismissed with prejudice.

Third, Defendants are correct that the Eighth Amendment is inapplicable to this case.

The Fifth Circuit has consistently held that the protections of the Eighth Amendment apply only

to convicted inmates, not suspects or even pretrial detainees.  *See, e.g., Morin*, 77 F.3d at 120

(citing *Ingraham v. Wright*, 430 U.S. 651, 671 n. 40, 97 S. Ct. 1401, 1412, n. 40, 51 L. Ed. 711

(1977); *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16, 99 S. Ct. 1861, 1872 n. 16, 60 L. Ed.2d 447

(1979)).  Since Ross was not a convicted inmate, Plaintiffs fail to state a valid claim under the

Eighth Amendment.  Accordingly, the Court grants Gautreaux's motion to dismiss this claim.

Because Plaintiffs cannot recover on this claim, it is dismissed with prejudice.

### c. Fourteenth Amendment Violation

### i.     Generally

Plaintiffs allege the Sheriff deprived Ross of his liberty without due process guaranteed

him by the Fourteenth Amendment.  (Doc. 1-2, P. 5).  Gautreaux does not specifically address

this claim in either his original or reply memoranda.

Turning to the Plaintiffs' claim that defendant Sheriff Gautreaux violated Ross's

constitutional rights through the denial of medical treatment (Doc. 7, P. 4), the law is clear that a

jail's treatment of a pretrial detainee is governed by the substantive protections of the Due

Process Clause of the Fourteenth Amendment, which protects the detainee's right to be free from

punishment prior to an adjudication of guilt.  *See Bell v. Wolfish*, 441 U.S. 520, 535-36, 99 S. Ct.

1861, 1872, 60 L. Ed. 2d 447 (1979).  The violation of a detainee's interest in bodily integrity,

through the denial of a basic human need such as reasonable medical care, can amount to

punishment under the Due Process Clause. *Partridge v. Two Unknown Police Officers of the City of Hous.*, 791 F.2d 1182, 1186-87 (5th Cir. 1986).

The appropriate standard to apply in analyzing a constitutional challenge by a pretrial detainee depends upon whether the constitutional challenge is seen to be an attack on a condition of confinement or a complaint about an episodic act or omission. *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996). When a plaintiff fails to specify which type of constitutional challenge, this Court has analyzed the complaint under both frameworks. *See O'Quin v. Gautreaux*, No. 14-98, 2015 WL 1478194, at *2 (M.D. La. Mar. 31, 2015) (citing *Edler v. Hockley Crity. Comm'rs Court*, 589 F. App'x 664, 667-69 (5th Cir. 2014) (unpublished)).

### ii.    Conditions of confinement

A condition of confinement case is a constitutional attack on the "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare*, 74 F.3d at 643. This Court has explained that,

> in such cases, the harm is seen to be caused by the policy or practice itself. This is true, for example, where inadequate medical care, *as a whole,* results in deplorable conditions of confinement. *See Scott v. Moore,* 114 F.3d 51, 53 (5th Cir.1997). The assumption in such cases is that the policy or practice is intentional, and the pertinent inquiry is whether the policy or practice in question is "reasonably related to a legitimate governmental purpose." *Hare v. City of Corinth, supra,* 74 F.3d at 640, 644–45.

*Bailey v. E. Baton Rouge Par. Prison*, No. 12-224, 2015 WL 545706, at *3 (M.D. La. Feb. 9, 2015). "Thus, to successfully set forth a condition of confinement claim, the Plaintiff must allege "(1) a rule or restriction, or identifiable intended condition or practice, or a jail official's acts or omissions that were sufficiently extended or pervasive which was (2) not reasonably related to a legitimate government objective, and which (3) caused the violation of the detainee's constitutional rights." *O'Quin*, 2015 WL 1478194, at *3 (citation omitted). "To establish the first prong, a detainee challenging jail conditions must show more than an isolated incident; he

'must demonstrate a pervasive pattern of serious deficiencies in providing for his basic human needs.' " *Elder*, 589 F. App'x at 668 (citation omitted).

In *O'Quin*, this Court found that the Plaintiffs had successfully alleged a condition of confinement claim, and that case demonstrates why such a claim fails here. In *O'Quin*, a mentally ill individual was arrested and placed in the East Baton Rouge Parish Prison. 2015 WL 1478194, at *1. The complaint alleged that the detainee's father warned the parish about the detainee's illness and need for medication, but the defendants failed to provide him with adequate medical treatment. *Id.* Further, the plaintiffs alleged that the detainee was "beaten and extensively restrained during his time in jail, causing him to develop a bacterial infection that seeped into his wounds and ultimately killed him." *Id.*

This Court found that the plaintiffs had sufficiently alleged each of the above elements for a condition of confinement claim. Specifically, the "[p]laintiffs [had] allege[d] a series of unresolved, systemic deficiencies sufficient for the Court to infer the existence of a *de facto* policy of failing to adequately treat pretrial detainees with mental illnesses" as well as "continuing serious deficiencies in policies, practices and procedures at the jail related to psychiatric care, the observation of prisoners with mental illness and the administration of psychotropic medication." *Id.* at *3. Further, the *O'Quin* plaintiffs claimed that the Defendants lacked "written policies on the administration of psychotropic medications" and "failed to appropriately address these deficiencies in policies, practices, and procedures, despite having knowledge of them." *Id.* "Plaintiffs also provide[d] examples of legitimate governmental objectives that [were] thwarted by the Defendants' failure to establish and implement an appropriate policy regarding treatment of mentally ill detainees at jail." *Id.* Finally, the plaintiffs

adequately alleged a constitutional injury. *Id.* Based on these allegations, the *O'Quin* court found that the plaintiffs had adequately alleged a condition of confinement claim. *Id.* at *4.

Unlike *O'Quin*, the Plaintiffs here have failed to make such a showing. Plaintiffs have alleged only the following:

> 9B. Upon information and belief, defendants, Sid Gautreaux and/or East Baton Rouge Parish Sheriff office, are governed by a policy requiring enhanced observation of individuals that are placed in solitary confinement; inspection are required to take place every thirty (30) minutes." . . .
>
> 9G. Upon information and belief, defendants failed to comply with policies and procedures governing the treatment of prisoners placed in solitary confinement and/or prisoners requiring medical treatment." . . .
>
> 9I. Upon information and belief, there have been three or more reported incidents of prisoners being rushed to local emergency rooms as a result of ailments and/or injuries sustained while in solitary confinement at the East Baton Rouge Parish

(Doc. 7, P. 2-4). While Plaintiffs have alleged a rule – one requiring enhanced observation of individuals in solitary – they are not complaining about the rule as much as they are attacking the failure to enforce the rule. Thus, the Plaintiffs are citing to certain omissions by Gautreaux.

However, Plaintiffs fail to satisfy the standard provided above for a condition of confinement claim based on omissions. Unlike *O'Quin*, there is no allegation here of any "extended or pervasive" omissions or "systemic deficiencies" amounting to a "*de facto* policy of failing to adequately treat pretrial detainees." This is insufficient to adequately allege a condition of confinement claim. Further, unlike *O'Quin*, Plaintiffs have not alleged or pointed to any legitimate governmental objectives that were thwarted by the Defendants' policy or conduct. This is an additional reason why Plaintiffs' amended complaint fails.

As a result, the Court finds that the Plaintiffs have failed to adequately allege a condition of confinement claim. The Court will order the Plaintiffs to file a Rule 7 reply clarifying their allegations on this claim.

### iii.    Episodic act or omission

Additionally, if the prisoner is complaining of one or more particular acts or omissions by a prison official, the claim is characterized as an "episodic act or omission" case. *Hare,* 74 F.3d at 645. Here, Plaintiffs allege Gautreaux "denied [Ross] medical treatment." (Doc. 7, p. 3-4), which appears to be an attempt to set forth an "episodic act or omission" claim. *See Tamez v. Manthey*, 589 F.3d 764, 769-70 (5th Cir. 2009). However, the Plaintiffs' petitions fail to adequately allege this claim.

This Court has recognized that, when the Defendant files a motion to dismiss an episodic act or omission claim, the Court must evaluate the complaint under the "deliberate indifference standard":

> Under this standard, in order for a prisoner-plaintiff to prevail on a claim that his constitutional rights have been violated by the provision of improper or inadequate medical care, he must allege and show that appropriate care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Johnson v. Treen,* 759 F.2d 1236, 1237 (5th Cir.1985). Whether the plaintiff has received the treatment or accommodation that he believes he should have is not the issue. *Estelle v. Gamble, supra,* 429 U.S. at 107. Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. *Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir.1991); *Johnson v. Treen, supra,* 759 F.2d at 1238. Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference," *Farmer v. Brennan,* 511 U.S. 825, 839–40 (1994), and in order to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The deliberate indifference standard sets a very high bar: the plaintiff must establish that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice,* 239 F.3d 752, 756 (5th Cir.2001), *quoting Johnson v. Treen supra,* 759 F.2d at 1238.

*Bailey*, 2015 WL 545706, at *4.

Plaintiffs may have alleged an episodic act or omission claim against some of the prison officials; they allege that Ross faced a substantial risk of serious harm between September 10-13,

2014, that his condition deteriorated over that time, and that he was found naked and in the fetal position on the morning of September 13, 2014, yet officials took no action until that evening. (Doc. 7, P. 3, ¶ 9D).

However, the issue here is whether Gautreaux is liable. This Court has recognized that a supervisory official may be liable if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, . . . (2) he implements unconstitutional policies that causally result in the constitutional injury[,]" or (3) there is a failure to adopt a policy or a failure to train or supervise, provided that the defendant acted with deliberate indifference. *O'Quin,* 2015 WL 1478194, at *5 (M.D. La. Mar. 31, 2015) (citations omitted).

Here, Plaintiffs do not allege the first two. Plaintiffs' allegation that Gautreaux denied Ross medical care is conclusory and thus need not be considered. *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 550 (5th Cir. 2007) (stating that, when reviewing a complaint on a Rule 12(b)(6) motion, the court does "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions"). Thus, there is no allegation of an affirmative participation by Gatureaux in any constitutional injury. Moreover, there is no allegation that Gautreaux implemented a policy that caused the episodic act or omission; as discussed below, Plaintiffs allege that Gautreaux failed to comply with their policies, not that he implemented unconstitutional policies. Thus, the remaining issues are whether Gautreaux failed to train or failed to implement policies.

### a. Failure to train

As to Plaintiffs' allegations regarding failure to train, Gautreaux asserts qualified immunity and argues that Plaintiffs' claims fail to overcome that defense. (Doc. 2-1, P. 10). Conversely, Plaintiffs claim that they alleged that Gautreaux failed to "train his staff . . . as it

pertains to protocol involving prisoners requiring medical attention while in solitary confinement." (Doc. 5, P. 8, ¶ J). Plaintiffs argue that this allegation outlines the personal actions of Gautreaux that demonstrate his indifference. (Doc. 7, P. 4).

In short, the Court finds that the Plaintiff has not adequately alleged a failure to train claim. To establish the individual liability of a supervisor under section 1983 based on a failure to train, a plaintiff must show: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference. *Estate of Davis ex rel. McCully*, 406 F.3d at 381 (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998)). In finding factual allegations of a failure to train claim insufficient on a 12(b)(6) motion, this Court quoted the Fifth Circuit and stated:

> Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Deliberate indifference requires a showing of more than negligence or even gross negligence. Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity. To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation. It may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, a supervisor might reasonably be found to be deliberately indifferent....

> We have stressed that a single incident is usually insufficient to demonstrate deliberate indifference. In *Cousin v. Small,* for example, we held that to succeed on his claim of failure to train or supervise the plaintiff must demonstrate deliberate indifference, which usually requires a plaintiff to demonstrate a *pattern of violations.* Similarly, in *Snyder v. Trepagnier,* we held that "proof of a single violent incident ordinarily is insufficient" for liability. Rather, the plaintiff must demonstrate at least a pattern of *similar incidents in which the citizens were injured.* Moreover, a showing of deliberate indifference requires that the Plaintiffs

show that the failure to train reflects a "deliberate" or "conscious" choice to endanger constitutional rights.

Prior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question. That is, notice of a pattern of *similar* violations is required. While the specificity required should not be exaggerated, our cases require that the prior acts be fairly similar to what ultimately transpired[.]

*Clayton*, 2012 WL 2952531, at *7 (quoting *Estate of Davis v. City of N. Richland Hills,* 406 F.3d 375, 381-83 (5th Cir.2005)).

Here, Plaintiffs' allegations are insufficient to state a claim for failure to train. As stated above, Paragraph "J" states Gautreaux "failed to properly train [his] staff . . . as it pertains to protocol involving prisoners requiring medical attention while in solitary confinement." (Doc. 7, P. 4). However, this claim lacks any showing of deliberate indifference. There is no allegation that Gautreaux disregarded known or obvious consequences of his actions. Similarly, there is no allegation that he was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed or that he actually drew that inference. Plaintiffs state that Gautreaux was "deliberately indifferent," but this allegation is merely conclusory.

The Plaintiffs attempt to allege a pattern of violations, but this is also insufficient. Specifically, Plaintiffs claim that there have been three or more reported incidents of prisoners being rushed to local emergency rooms as a result of ailments and/or injuries sustained while in solitary confinement at the Prison in the three month period surrounding Ross's incarceration. (Doc. 7, P. 4 ¶ 9I). This is merely an allegation of several other injuries, not a specific claim of misconduct by Gautreaux or his employees. That is, this is not a specific allegation of a pattern of *violations* showing an obvious inadequacy of training. Without any allegation concerning the Sheriff or his subordinates' misconduct during these other incidents, the Court cannot determine whether they are "fairly similar to what transpired" to Ross so as to find that Gautreaux's alleged

failure to train reflected a "deliberate" or "conscious" choice to endanger constitutional rights. *See Clayton*, 2012 WL 2952531, at *8.

In short, Plaintiffs failed to state a claim for failure to train. However, the Court will allow the Plaintiffs to file a Rule 7 reply clarifying their allegations.

### b. Failure to establish and implement adequate inspection procedures

Plaintiffs allege Sheriff Gautreaux failed to "establish and implement adequate inspection procedures for the discovery and elimination of hazards." (Doc. 1-2, P. 3). Gautreaux asserts qualified immunity against this claim. (Doc. 2-1, P. 12).

The Court will grant Gautreaux's motion on this issue. A failure to adopt a policy claim requires a showing of deliberate indifference. *See O'Quin*, 2015 WL 1478194, at *6. As this Court explained:

> Such an omission by a municipal policymaker can be the basis for § 1983 liability only if it is an intentional choice, not merely an unintentionally negligent oversight. A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights. To establish deliberate indifference, [the supervisors] must have had actual or constructive notice that a particular omission in policy causes . . . employees to violate citizens' constitutional rights and still have chosen to omit that policy.

*Id.* (finding that plaintiffs alleged a failure to adopt a policy claim when they alleged that the supervisors "knew of the consequences of not adopting policies regarding the treatment of mentally ill detainees and still refused to act" and "knew of this need, but refused to promulgate written policies to address it."). While the Plaintiffs use the phrase "deliberate indifference" and references other incidents, as demonstrated above, this is insufficient to make the required showing, particularly given the assertion of qualified immunity. Accordingly, the Plaintiffs must file a Rule 7 reply clarifying their allegations against Gautreaux.

### D. Section 1983 claims against Sheriff Gautreaux in his official capacity

#### 1. Parties' arguments

Gautreaux also attacks Plaintiffs' claims against Gautreaux in his official capacity. Gautreaux correctly notes that a suit against a governmental official in his official capacity is the same as a suit against the governmental entity of which he is an agent. (Doc. 2-1, p. 5 (citing *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999)). Gautreaux also cites to appropriate case law stating the three-part test for this issue: "municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L.Ed. 2d 611 (1978)). Gautreaux argues that the Plaintiffs have not alleged a policy, deliberate indifference, or a pattern of misconduct.

Gautreaux also attacks the Plaintiffs' failure to train or supervise claim. Gautreaux argues that the failure to train or supervise claim requires deliberate indifference, and the Plaintiffs have not properly alleged that. Gautreaux also contends that the failure to train claim usually requires a pattern of similar constitutional violations and that the Plaintiffs have not shown this.

Plaintiffs do not directly address the arguments made against them for the official capacity claim. Rather, Plaintiffs assert that their allegations show that the defendants failed to provide adequate and humane care to Ross. Plaintiffs further argue that the Sheriff is "ultimately personally liable for his failure to implement adequate policies" that would have prevented this and other incidents. Finally, Plaintiffs claim they have stated a claim for a failure to implement

inspection procedures.  Gautreaux responds that these vague allegations do not show a pattern of

violations necessary to establish deliberate indifference.

## 2. Analysis

### a. Municipal liability under Section 1983 generally

To elaborate on the above analysis, the Fifth Circuit has explained:

> Under the decisions of the Supreme Court and this court, municipal liability under
> section 1983 requires proof of three elements: a policymaker; an official policy;
> and a violation of constitutional rights whose 'moving force' is the policy or
> custom. [*Monell v. Dep't. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018,
> 2037, 56 L.Ed.2d 611 (1978)] and later decisions reject municipal liability
> predicated on *respondeat superior*, because the text of section 1983 will not bear
> such a reading. Consequently, the unconstitutional conduct must be directly
> attributable to the municipality through some sort of official action or imprimatur;
> isolated unconstitutional actions by municipal employees will almost never
> trigger liability. The three attribution principles identified here—a policymaker,
> an official policy and the "moving force" of the policy—are necessary to
> distinguish individual violations perpetrated by local government employees from
> those that can be fairly identified as actions of the government itself.

*Piotrowski*, 237 F.3d at 578 (citations omitted).

The central issue here is whether an official policy or custom was sufficiently pled.  This

Court has explained that an official policy is defined as either:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted
> and promulgated by the municipality's lawmaking officers or by an official to
> whom the lawmakers have delegated the policymaking authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which,
> although not authorized by officially adopted and promulgated policy, is so
> common and well settled as to constitute a custom that fairly represents municipal
> policy. Actual or constructive knowledge of such custom must be attributable to
> the governing body of the municipality or to an official to whom that body had
> delegated policy-making authority.

*Clayton*, 2012 WL 2952531, at *10 (citing *Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th

Cir.1984)).

The petitions reveal only one potential policy – the failure to adhere to inspection procedures. Specifically, Plaintiffs allege that Gautreaux "failed to comply with policies and procedures governing the treatment of prisoners placed in solitary confinement and/or prisoners requiring medical treatment" and that, on information and belief, "there have been three or more reported incidents of prisoners being rushed to local emergency rooms as a result of ailments or injuries sustained while in solitary confinement at the East Baton Rouge Parish Jail in the three month period surrounding petitioner's incarceration." (*Id.*, P. 4, ¶¶ 9G, 9I). These allegations do not qualify as the first type of official policy, so the issue is whether they are the second.

They are not. As stated above, the Plaintiffs allege only injuries, not conduct by any of the parish's employees. Thus, there is no allegation that the injuries were the result of "a persistent, widespread *practice of city officials or employees* which . . . is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.* (citation omitted). Further, the above standard requires that actual or constructive knowledge of the custom be attributable to Gautreaux, *id.*, and the Plaintiffs fail to show this.

For these reasons, Gautreaux's motion to dismiss is granted, and the Plaintiffs' claim is dismissed. However, the Plaintiffs are given leave to amend this claim.

### b. Failure to train or supervise

The Plaintiffs' failure to train and supervise claim is dismissed for similar reasons. This Court has explained:

> To support a claim based upon a failure to train or supervise, a plaintiff must show that: (1) the supervisor either failed to train or supervise a subordinate official; (2) there is a causal link between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise constitutes deliberate indifference. " '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his actions." Generally, deliberate indifference requires that the plaintiff show: (1) a pattern of similar violations; (2) that the inadequacy

of the training was obvious; and (3) that the inadequacy of the training was obviously likely to result in a constitutional violation.

*Collier v. Roberts*, No. 13-CV-425, 2015 WL 1128399, at *3 (M.D. La. Mar. 11, 2015) (citations omitted). Again, the Plaintiffs point to three other incidents involving inmates in solitary confinement being rushed to the emergency room, but they fail to allege any causal link between these incidents and the purportedly inadequate training of Gautreaux. Further, Plaintiffs use the phrase "deliberate indifference," but this allegation is conclusory.

For these reasons, the motion to dismiss Plaintiffs' failure to train claim against Gautreaux in his official capacity is granted. However, as an amendment may not be futile, the Plaintiffs are given leave to amend their complaint to properly set forth a claim.

### c. Failure to establish and implement adequate inspection procedures

Plaintiffs also claim that Gautreaux is liable in his official capacity for failing to establish and implement adequate inspection procedures. The Defendants deny liability on this claim.

The Fifth Circuit has explained:

A municipal "policy" must be a deliberate and conscious choice by a municipality's policy-maker. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989) (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986) (plurality)). While the municipal policy-maker's failure to adopt a precaution can be the basis for § 1983 liability, such omission must amount to an intentional choice, not merely an unintentionally negligent oversight. *City of Canton,* 489 U.S. at 387, 109 S.Ct. at 1204; *Manarite v. City of Springfield,* 957 F.2d 953, 959 (1st Cir.1992).

The Supreme Court has held that municipal failure to adopt a policy does not constitute such an intentional choice unless it can be said to have been "deliberately indifferent." *City of Canton,* 489 U.S. at 390, 109 S.Ct. at 1205. A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights. *Id.* Consider, for example, a municipality that arms its officers with firearms, knowing to a moral certainty that the armed officers will arrest fleeing felons. The municipality would be deliberately indifferent in failing to train the officers properly in the use of deadly force, because the likelihood of

unconstitutional consequences of the municipality's omission is obvious. *Id.* 489 U.S. at 390 n. 10, 109 S.Ct. at 1205 n. 10.

*Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992).

Applying this standard, the Court grants the Defendants' motion to dismiss. Plaintiffs have not alleged that it is obvious that constitutional violations are a likely consequence of not adopting the procedures. Plaintiffs have alleged three incidents involving detainees being brought to the emergency room; this involves a failure to comply with an existing policy, not a failure to adopt or implement a new policy. Thus, while the Plaintiffs have asserted in a conclusory manner that there has been a failure to implement adequate inspection procedures, they have not shown that this was an intentional choice by Gautreaux. Accordingly, the Court will grant Gautreaux's motion to dismiss this claim. However, an amendment would not be futile, so the Court will grant the Plaintiffs leave to amend their complaint on this issue.

### E. Punitive Damages under § 1983

#### 1. Parties' Arguments

Plaintiffs' petition seeks punitive damages, presumably under section 1983. Gautreaux argues the Plaintiffs are not entitled to punitive damages because they fail to allege his actions were motivated by evil motive, evil intent, or with reckless or callous indifference. Plaintiffs claim punitive damages are proper in this case due to the wanton and intentional indifference demonstrated by Gautreaux.

#### 2. Analysis

It is well established that section 1983 does not allow for recovery of punitive damages against a municipal entity. *See Clayton*, 2012 WL 2952531, at *12 (citing *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981)). Accordingly, the

Plaintiffs cannot recover punitive damages against Gautreaux in his official capacity. This claim is dismissed with prejudice.

Punitive damages may be awarded only when the defendant's individual conduct "is 'motivated by evil intent' or demonstrates 'reckless or callous indifference' to a person's constitutional rights." *Williams v. Kaufman Cty.*, 352 F.3d 994, 1015 (5th Cir. 2003) (citation omitted). However, the Court has dismissed all § 1983 claims against Gautreaux in his individual capacity, so Plaintiffs' claim for punitive damages must also fail. Moreover, in the Plaintiffs' amended prayer, they did not even include a request for punitive damages.

Accordingly, Gautreaux's motion is granted. However, Plaintiffs are given leave to amend to allege, if they can, facts warranting the imposition of punitive damages.

### F. State Law Negligence Claims

Plaintiffs make state law claims that Defendants were negligent in: 1) failing to identify and remedy the need for medical treatment and failing to provide proper medical treatment; 2) failing to establish and implement adequate inspection procedures for the discovery and elimination of hazards; 3) failing to properly train his employees, representatives and/or agents; 4) failing to prevent the subject incident; and 5) failing to exercise reasonable care. (Doc. 1-2, P. 4). Gautreaux moves to dismiss these claims on the basis that neither he nor his employees had a duty towards the Plaintiff in regards to any medical care, and Plaintiffs have not alleged sufficient facts to support their allegations. (Doc. 2-1, P. 16).

### 1. Gautreaux and his employees have a duty to provide medical treatment to prisoners

### a. Parties' Arguments

Plaintiffs allege Gautreaux and/or his employees were negligent in failing to identify and remedy the need for medical treatment and failing to provide proper medical treatment. (Doc. 1-

2, P. 3-4). Gautreaux argues that medical personnel at the Parish Prison are not employees of Sheriff Gautreaux, and vicarious liability requires an employment relationship. Therefore, he cannot be vicariously liable for the medical personnel's negligence. (Doc. 2-1, P. 17). In addition, Gautreaux asserts that neither he nor his employees owed a duty to Ross for any medical treatment whatsoever and therefore cannot be liable. (Doc. 2-1, P. 16-17). Plaintiffs claim it is immaterial who failed to identify and remedy the need for care and failed to provide medical treatment. (Doc. 5, P. 9). In his reply, Gautreaux suggests it is critical to determine who failed to provide medical treatment, whether the prison guards or medical staff, because the guards are his employees, but the medical staff is not. (Doc. 8, P. 9).

### b. Analysis

State law divides responsibility for parish jails. The parishes are charged with their jails' physical maintenance. *See* La. Rev. Stat. § 15:702. However, the duty to administer and operate the jails falls on the sheriff of each parish. *See* La. Rev. Stat. § 15:704; *see also Magee v. St. Tammany Par. Jail*, No. 09-5839, 2010 WL 1424404, at *4 (E.D. La. Mar. 5, 2010).

Gautreaux cites *Amiss v. Dumas,* 411 So.2d 1137 (La. App. 1 Cir. 1982), in support of his argument, but this case actually supports the Plaintiffs' claim. In *Amiss*, the court found that "while the City-Parish is responsible for the *expenses* of . . . providing medical treatment to the prisoners . . . the sheriff has the duty of operating the jail and seeing to it that the prisoners are *properly cared for . . .*" *Id.* at 1141 (emphasis added).

Additionally, the court in *Landry v. E. Baton Rouge Par. Sheriff's Office*, 2014-0733 (La. App. 1 Cir. 3/9/15); 2015 WL 1033767, at *2 (unpublished) rejected Gautreaux's argument:

> Under Louisiana law, confining authorities, such as a sheriff in charge of a parish jail, still maintain a legal obligation to provide medical treatment for prisoners. The standard of care imposed

upon the confining authority in providing for the medical needs of prisoners is that those services be adequate and reasonable.

Accordingly, since Gautreaux, as the sheriff, has a duty to provide adequate and reasonable medical treatment to prisoners, he may be held liable independently for his failure to do so.

Gautreaux can also be vicariously liable for the torts of his employees. The Louisiana Civil Code provides that "[m]asters and employers are answerable for the damage occasioned by their servants . . ." La. Civ. Code art. 2320. If Gautreaux's employees were found to be negligent in failing to identify and remedy the need for medical treatment and/or failing to provide proper medical treatment, Gautreaux would be vicariously liable through the doctrine of respondeat superior.

In sum, the Court finds that Plaintiffs have sufficiently alleged Gautreaux's duty to provide medical treatment for prisoners and his alleged breach of that duty under Louisiana law. Accordingly, Gautreaux's motion to dismiss these claims is denied.

### 2. Gautreaux breached his duty to establish and implement adequate inspection procedures

Plaintiffs allege Gautreaux was negligent in failing to establish and implement adequate inspection procedures. (Doc. 1-2, P. 3). Gautreaux asserts three arguments in response. First, he did not breach a duty to Ross in failing to establish and implement adequate inspection procedures. (Doc. 2-1, P. 18). Second, Plaintiffs have failed to establish how this failure was the cause in fact of Ross's injuries. (Doc. 2-1, P. 17). Third, he is entitled to immunity based upon La. Rev. Stat. § 9:2798.1. (*Id*.). Plaintiffs fail to respond to any of these arguments.

The Court rejects Gautreaux's arguments for several reasons. First, *Amiss* states "the sheriff has the duty of operating the jail." *Amiss*, 411 So.2d at 1141. This duty would include

establishing and implementing procedures to inspect the condition of prisoners, especially those in ill health. Gautreaux's failure to do so would qualify as a breach.

Second, Plaintiffs plead that Ross's injuries were caused by the negligence and/or fault of Sheriff Gautreaux and/or his employees (Doc. 1-2, P. 3). Taking the allegations as true, Plaintiffs have sufficiently pleaded that the negligence of the Sheriff and/or his employees were the cause of the damages sued on.

Lastly, the Court rejects Gautreaux's argument that even if the Plaintiffs allege he breached a duty to Ross to establish and implement adequate inspection procedures, he is entitled to immunity from Plaintiffs' state law claims under La. Rev. Stat. § 9:2798.1. (Doc. 2-1, P. 18).

Officers, officials, and employees of any of Louisiana's political subdivisions are, under certain circumstances, statutorily entitled to immunity from liability "based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts." La. Rev. Stat. § 9:2798.1. When a defendant invokes this discretionary function immunity as an affirmative defense, a court must initially determine whether the governmental agency had a choice or discretion regarding whether to follow a particular course of action. *Johnson v. Orleans Par. Sch. Bd.,* 2006–1223, p. 14 (La. App. 4 Cir. 1/30/08); 975 So.2d 698, 709. If a statute, regulation, or policy dictated the governmental agency's action, then immunity does not apply. *Id.*, 975 So.2d at 709-10. However, if there was no proscribed duty, the defendant must then introduce evidence at trial that the choice was "grounded in 'social, economic, or political policy.' " *Id.* at 710 (quoting *Simeon v. Doe,* 618 So.2d 848, 852–53 (La. 1993)); *see also Lambert v. Riverboat Gaming Enf't. Div.,* 96–1856, p. 9–10 (La.App. 1 Cir 12/29/97); 706 So.2d 172, 177–78 ("[E]ven if certain of the alleged acts of misconduct . . . are discretionary acts and decisions as claimed by the defendants, we are unable to determine through the exception of no

cause action whether the defense will apply herein. Even where discretion is involved, the court must determine whether the discretionary act is the kind which is 'grounded in social, economic or political policy,' a question of fact to be determined through a trial.").

Accordingly, discretionary function immunity is not available to Gautreaux as an affirmative defense at the motion to dismiss stage. In sum, taking the allegations as true, Plaintiffs have effectively alleged this negligence claim. Gautreaux's motion is denied.

### 3. Failure to properly train

Plaintiffs assert that Gautreaux "failed to properly train his staff as it pertains to protocol involving prisoners requiring medical attention while in solitary confinement." (Doc. 7, P. 4). Gautreaux argues Plaintiffs have not alleged any facts to support their conclusory allegation. (Doc. 2-1, P. 16). Plaintiffs argue their allegation establishes a cause of action. (Doc. 5, P. 9).

The Court finds that Plaintiffs' allegations as to this claim are adequate. In addition, as previously stated, discretionary function immunity is not available to Sheriff Gautreaux at the motion to dismiss stage. Therefore, regarding these allegations as true, Plaintiffs succeed in pleading this negligence claim, and Gautreaux's motion is denied.

### 4. Failure to prevent the subject incident

Plaintiffs allege Gautreaux and/or his employees were negligent in failing to prevent the subject incident. (Doc. 1-2, P. 4). Defendant claims that Plaintiffs fail to identify any particular incident, who was involved, how it caused damages, or how the Sheriff failed to prevent the alleged incident. (Doc. 2-1, P. 19). Plaintiffs argue their allegation establishes a cause of action. (Doc. 5, P. 9).

The Court disagrees with Gautreaux's argument. The petitions clearly show that the particular incident referred to is Ross' solitary confinement and the failure of the Sheriff to take

appropriate steps to prevent what Plaintiffs allege could and should have been avoided. Plaintiffs specifically state that Ross's injuries were caused by the negligence of Sheriff Gautreaux and/or his employees. (Doc. 1-2, P. 3).  As discussed above, the Sheriff may be vicariously liable for the negligence of his employees.  Thus, Gautreaux's motion to dismiss this claim is denied**.**

### 5.  Failure to exercise reasonable care

Plaintiffs claim that Gautreaux and/or his employees failed to exercise reasonable care. (Doc. 1-2, P. 4).  Gautreaux fails to address this allegation in either memorandum.

The Court finds that Plaintiffs adequately stated this claim.  Plaintiffs allege that Ross's medical condition would have been noticeably exigent twenty-four to thirty-six hours prior to his reporting to the Emergency Room.  (Doc. 7, P. 3).  Plaintiffs further aver that Ross was found naked and in the fetal position in his cell the morning of September 13, 2014, and it was not until late in the evening before defendants provided medical treatment.  (Id.).

As previously discussed, Gautreaux and his employees had a duty to provide reasonable and adequate medical treatment to Ross.  Accepting the allegations as true, Plaintiffs state a claim for the failure to exercise reasonable care.  Therefore, Gautreaux's motion is denied.

### G.  Punitive damages under state law

Plaintiffs claim they are entitled to punitive damages under Louisiana law.  (Doc. 1-2, P. 5).  However, "[p]unitive damages are not allowed under Louisiana law in absence of a specific statutory provision." *Golden v. Columbia Cas. Co.*, No. 13-547, 2015 WL 3650790, at *9 (M.D. La. June 11, 2015).  Because Louisiana law does not have a specific statute allowing for the recovery of punitive damages for Plaintiffs' state law claims, Plaintiffs' claim for punitive damages under Louisiana state law is dismissed with prejudice.

### H. Paul and Karen Bouchereau's right of action

#### 1. Parties' arguments

Ross's parents, Paul and Karen Bouchereau, allege that "they have suffered the loss of [his] love, society, services, work and affection" and that Gautreaux is liable unto them for emotional and mental distress. (Doc. 1-2, P. 4). Additionally, Paul and Karen Bouchereau claim that they are entitled to expenses paid for Ross's medical treatment. (Doc. 5, P. 6).

Finally, it is unclear whether the Plaintiffs seek damages under *Lejeune v. Rayne Branch Hospital*, 556 So.2d 559 (La. 1990); in their opposition to the Parish of East Baton Rouge's Motion to Dismiss (Doc. 28), they seek such damages for seeing their son upon their arrival at the hospital. Because it is unclear whether these damages are sought against Gautreaux, the Court will address this claim here.

Gautreaux argues that mental anguish suffered by parents is not compensable in a loss of consortium claim. (Doc. 2-1, P. 5). Moreover, Gautreaux claims that Paul and Karen Bouchereau are not entitled to damages in their individual capacities for Ross's injuries. Gautreaux's motion to dismiss is only directed at Plaintiffs' state law claims.

#### 2. Analysis

Gautreaux's motion on this issue is granted in part and denied in part. First, the Court agrees with Gautreaux's argument that mental anguish suffered by the parents because of the injury to their son is not compensable in a loss of consortium claim under Louisiana state law. This is an accurate statement of Louisiana law. *See Simpson v. State through Dep't of Transp. & Dev.*, 636 So.2d 608 (La.App. 1 Cir. 1993); *Spears on Behalf of Spears v. Jefferson Par. Sch. Bd.*, 94-352 (La. App. 5 Cir. 11/16/94); 646 So. 2d 1104; *Morrison v. Kappa Alpha Psi*

*Fraternity*, 31,805, p. 23 (La. App. 2 Cir. 5/7/99); 738 So. 2d 1105, 1122. Accordingly, this claim is dismissed with prejudice.

The Court also dismisses any *Lejeune* claim. *Lejeune* mental anguish damages are now governed by La. Civ. Code art. 2315.6, which allows recovery for certain persons "who view an event causing injury to another person, or who come upon the scene of the event soon thereafter." Here, there is no allegation in the Petition or amended petitions that Paul and Karen viewed Ross's condition at the jail or came across the event shortly thereafter. Even if Plaintiffs had alleged that they saw Ross at the hospital, it is questionable whether this would satisfy the above requirement of Article 2315.6. Nevertheless, out of an abundance of caution, and given the ambiguity in the petitions, the Court will allow Paul and Karen Bouchereau an opportunity to amend their complaint to properly allege a cause of action for mental anguish.

Additionally, while Paul and Karen Bouchereau say in their opposition that that they are entitled to payment for medical expenses, the Plaintiffs made no allegation to this effect in their complaints. Thus, the Court will deny the motion to dismiss on this issue as moot.[3]

Finally, the Plaintiffs' petitions are unclear as to whether Paul and Karen are seeking to recover under section 1983 for mental anguish individually or through a loss of consortium claim. Further, the Defendants appear to seek dismissal only of the state law claims on these issues. Accordingly, the Court will decline to address any such § 1983 claims.[4]

---

[3] The Court notes that, if Plaintiffs choose to amend their petitions to seek recovery for such medical expenses, then they must do so in their capacity as curators, not in their individual capacity. "[T]he relationship between interdict and curator is the same as that between minor and tutor." La. Code Civ. Pro. art. 4566(A). The Louisiana Supreme Court has recognized that damages for a minor's medical expenses should be awarded to a tutor in their capacity as tutor. *See Jones v. Hawkins*, 98-1259 (La. 3/19/99); 731 So.2d 216, 221.

[4] The Court notes that, in the Fifth Circuit, bystanders cannot recover for negligent infliction of emotional distress under § 1983. *See Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 172 (5th Cir. 1985). Additionally, it does not appear that loss of consortium is recoverable for a § 1983 claim. *See Brown v.*

### III.    Conclusion

**IT IS ORDERED** that the Motion to Dismiss (Doc. 2) is **GRANTED IN PART** and **DENIED IN PART**;

**IT IS FURTHER ORDERED** that Plaintiffs' § 1983 claims against Sheriff Gautreaux are **DISMISSED WITH PREJUDICE** to the extent they rely on a theory of *respondeat superior* ;

**IT IS FURTHER ORDERED** that Plaintiffs'§ 1983 claims against Gautreaux for violations of the Fifth and Eighth Amendments are **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that Plaintiffs will file a reply to Gautreaux's pleading of qualified immunity pursuant to Federal Rule of Civil Procedure 7(a) within 28 days of this order, and the order will address Plaintiffs' 1) Fourth Amendment claim for unlawful search; and 2) Fourteenth Amendment claim for an unlawful condition of confinement, an episodic act or omission, a failure to train, and a failure to establish and implement policies and procedures;

**IT IS FURTHER ORDERED** that Plaintiffs will file within 28 days of this order an amended complaint, if they can do so, with respect to 1) their § 1983 claims against Gautreaux in his official capacity ; 2) their § 1983 claim for punitive damages against Gautreaux in his individual capacity; and 3) Paul and Karen Bouchereau's state law mental anguish claim;

**IT IS FURTHER ORDERED** that Plaintiffs' claims 1) for punitive damages under § 1983 against Gautreaux in his official capacity; 2) for punitive damages under Louisiana state

---

*ATX Grp., Inc.*, No. 3:11-CV-3340-N-BH, 2012 WL 3962620, at *11 (N.D. Tex. July 16, 2012) *report and recommendation adopted by,* No. 3:11-CV-3340-N-BH, 2012 WL 3962617 (N.D. Tex. Sept. 11, 2012); *Tate v. Waller*, No. 505CV166, 2007 WL 2688532, at *5-7 (S.D. Miss. Sept. 10, 2007) (and cases cited therein); *Unger v. Compton*, No. 6:05cv186, 2006 WL 1737567, at *5 (E.D. Tex. June 23, 2006), *aff'd*, 249 F. Appx. 346, 347 (5th Cir. 2007) (unpublished); *Russ v. Watts*, 414 F.3d 783, 788-89 (7th Cir. 2005) (and cases cited therein).

law; and 3) for Paul and Karen Bouchereau's mental anguish in connection with their loss of consortium claim, are **DISMISSED WITH PREJUDICE;**

      **IT IS FURTHER ORDERED** that, in all other respects, Defendant's motion is **DENIED**.

      Signed in Baton Rouge, Louisiana, on <u>September 11, 2015</u>.


_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**